IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL MCLAIN | § | |
| | § | |
| Debtor, | § | |
| | § | |
| ROBERT NEWHOUSE, TRUSTEE, | § | |
| | § | |
| Appellant, | § | No. 3:05-CV-2447-M |
| | § | |
| v. | § | |
| | § | |
| MICHAEL MCLAIN, LORI FUENTES, | § | |
| and GIL MCLAIN, JR., | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Robert Newhouse appeals from the Bankruptcy Court's judgment in favor of Appellees Michael McLain, Lori Fuentes, and Gil McLain, Jr., granting Appellees' Motion for Summary Judgment. Newhouse also seeks to strike Appellees' surreply brief. The Court **STRIKES** Appellees' surreply, which was filed without leave. For the reasons stated below, the Court **AFFIRMS** the Judgment of the Bankruptcy Court.

### FACTUAL BACKGROUND

This case arises from a dispute between Michael McLain and his bankruptcy estate. Michael McLain and his wife, Brandi, filed a bankruptcy petition on May 3, 2002. Four days later, Michael McLain's father, Gilbert McLain, Sr., applied for a term life insurance policy

through West Coast Life Insurance Company ("WCL") in the amount of $1.2 million. The application identified Michael McLain as the owner and beneficiary of the policy to be issued. WCL issued the policy on June 11, 2002. On July 12, 2002, Michael McLain made the first quarterly premium payment (the "Payment") on the WCL policy. Michael McLain was discharged from bankruptcy on August 26, 2002, and over the next year made four additional premium payments on the policy, each in the amount of $1,774.97. On July 29, 2003, Gilbert McLain was found shot to death as a result of what was determined to be a homicide.

On January 8, 2004, WCL filed a Complaint in Interpleader, joining as parties Michael McLain and his siblings.[1] WCL acknowledged that the proceeds of the policy were payable, but questioned whether Michael McLain was entitled to the proceeds under Section 1103.151 of the Texas Insurance Code.[2] WCL stated that an interpleader action was necessary for it to avoid exposure to inconsistent claims to the benefits of the policy.

On January 25, 2005, the Bankruptcy Court reopened Michael and Brandi McLain's bankruptcy case. Robert Newhouse, the trustee, requested the Court to refer WCL's interpleader action to the Bankruptcy Court, arguing that the bankruptcy estate was entitled to the proceeds of the WCL policy.[3] The district court referred the interpleader to the Bankruptcy Court on March 2,

---

[1] The interpleader action was styled *West Coast Life Insurance Company v. Michael McLain*, and was assigned Civil Action Number 3:04-CV-0034-L (Judge Sam A. Lindsay). The case was later transferred to Judge Jane J. Boyle.

[2] Section 1103.151 states that "A beneficiary of a life insurance policy or contract forfeits the beneficiary's interest in the policy or contract if the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured." WCL contended that Michael McLain was a suspect in the murder of his father.

[3] The crux of Newhouse's argument was that (1) Michael McLain withheld pre-petition funds from the bankruptcy estate, (2) such funds were used for the Payment, and (3) as a result, the bankruptcy estate is entitled to the proceeds of the WCL policy.

2005. Michael McLain and his siblings entered into a settlement agreement with respect to distribution of the policy proceeds, and on November 23, 2005, they filed a Motion for Summary Judgment in the Bankruptcy Court, asserting that the bankruptcy estate was not entitled to any of the proceeds of the policy. On December 5, 2005, the Bankruptcy Court granted the Motion for Summary Judgment, holding that "[a]lthough the Court finds there is a genuine issue of material fact as to whether property of the estate was [used to] pay the initial policy premium payment of July 11, 2002 on the term life insurance policy at issue in the adversary proceeding, the Court finds as a matter of law that the death benefit payable to McLain under the policy at issue is not property of the estate (and, therefore, the trustee has no interest in same)." Newhouse filed his Notice of Appeal on December 5, 2005.[4]

## STANDARD OF REVIEW

On appeal in a bankruptcy case, a district court reviews a bankruptcy court's decision to grant summary judgment *de novo*. *See In re Waterpoint Int'l LLC*, 330 F.3d 339, 342 (5th Cir. 2003) (citing *Mercer v. Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) (en banc)).

Summary judgment is warranted when the facts, as reflected in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact and that the law mandates summary judgment as a result.

---

[4] Newhouse filed his brief on February 8, 2006. Appellees filed their responsive brief on February 28, 2006, and Newhouse filed a reply brief on March 13, 2006. Appellees filed a surreply brief on March 28, 2006. On April 6, 2006, Newhouse filed a Motion to Strike the surreply brief, to which Appellees did not respond. Appellees did not receive leave of court to file a surreply brief, and are not entitled to one as of right under the local bankruptcy rules or the local district court rules. *See* Local Bankr. R. 8009(3); Local Civ. R. 7.1. The Court thus **STRIKES** Appellees' surreply brief.

-3-

*See Pourgholam v. Advanced Telemktg. Corp.*, No. 3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2-3 (N.D. Tex. June 9, 2004) (citing Fed. R. Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).

In determining whether genuine issues of material fact exist, "factual controversies are

construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch Props.*, 140 F.3d at 625.

## ANALYSIS

Newhouse urges that the bankruptcy court erred in finding that, even if property of the estate was used to make the Payment, the proceeds of the WCL policy are not property of the estate. Appellees disagree, and alternatively urge the Court to affirm on a different ground: that Appellees produced evidence that showed that Michael McLain used post-petition income to make the Payment, and Newhouse failed to show a genuine issue of material fact as to the source of the Payment. Accordingly, the Court will examine whether Newhouse produced evidence which created a genuine issue of material fact as to whether the source of the payment was undisclosed pre-petition income. Because the Court finds that Newhouse did not produce such evidence, the Court need not determine whether the estate could recover some or all of the proceeds of the WCL policy if the Payment had been made from undisclosed pre-petition income.

"Section 541(a)(1) [of the Bankruptcy Code] generally provides that the property of a bankruptcy estate consists of all legal and equitable interests of the debtor in property as of the commencement of the case. Even property that is entitled to be exempted is initially regarded as

estate property until it is claimed and distributed as exempt." *Cyrak v. Poynor*, 80 B.R. 75, 79 (N.D. Tex. 1987) (Fitzwater, J.) (internal quotation omitted) (citing *In re Hendricks*, 11 B.R. 48, 50 (Bankr. W.D. Mo. 1981)). Neither party contends that any property was claimed or distributed as exempt.[5]

Newhouse claims that Michael McLain took money that belonged to the estate and used it to make the Payment. Newhouse has the burden to prove those facts by a preponderance of the evidence. *See In re Viscount Air Servs., Inc.*, 232 B.R. 416, 448 (Bankr. D. Az. 1998).

As the movants, Appellees must identify those portions of the pleadings and discovery in the record that they contend demonstrate the absence of a genuine issue of material fact. *See Lynch Props.*, 140 F.3d at 625; *Lopez v. City of Dallas*, 3:03-CV-2223-M, 2006 WL 1450520, at *6-8 (N.D. Tex. May 24, 2006) (Lynn, J.). Appellees cite the deposition of Michael McLain, where he states that the Payment was made with his wife's post-petition income. *See* Appellees Br. at 27 (citing R. at 236). In his declaration in support of the Motion for Summary Judgment, Michael McLain also stated that he and his wife had "no meaningful cash" in their possession on May 3, 2002. R. 135-36. If the Payment was made with post-petition income, the estate has no claim to any of the proceeds of the WCL policy. *See In re Clark*, 960 F.2d 475, 477 (5th Cir. 1992) ("Because the earnings were post-petition, under the plain terms of Bankruptcy Code § 541(a)(1), which provides that property of a bankruptcy estate is comprised of those property interests of the debtor extant at the time of the commencement of the case, they accrued to [the

---

[5]In their brief, Appellees contend that if Brandi McLain received a paycheck in early May 2002, pre-petition, the Court should consider that income as exempt property. However, unless the McLains could show that they claimed such income as exempt (and they have made no such showing), the Court considers such income as part of the bankruptcy estate. *See Cyrak*, 80 B.R. at 79.

-6-

debtor] and not to the estate.") Newhouse thus must show that summary judgment is inappropriate because Appellees identified portions of the record which they contend demonstrate the absence of a genuine issue of material fact. *See Lynch Props.*, 140 F.3d at 625.

Newhouse first points to a ledger sheet (the "Ledger Sheet") contained in the appendix submitted by Appellees in support of their original motion for summary judgment, but not referred to in their brief. R. 144. Newhouse urges that a fair reading of the Ledger Sheet suggests that McLain had $2,525 in his possession on May 3, 2002. *Id.* The same document shows that McLain paid $1,989.75 to WCL approximately two months later. *See id.* The Court assumes, *arguendo*, that evidence that shows that, pre-petition, McLain possessed funds sufficient to make the Payment on May 3, 2002, creates a genuine issue of material fact as to whether Michael McLain did make the Payment with pre-petition income.[6]

Appellees object to consideration of the Ledger Sheet, contending it is not competent summary judgment evidence. Unauthenticated documents are generally not proper summary judgment evidence. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191-92 (5th Cir. 1991); *Oliver v. U.S. Dept. of Defense*, 44 F. Supp. 2d 821, 824 (W.D. Tex. 1999). In light of Appellees' argument, the Court entered an Order on

---

[6]McLain argues that even if he possessed funds on May 3, 2002, the Court should presume that the Payment was made from post-petition funds, citing *In re Vickery*, 63 B.R. 222 (Bankr. E.D. Tenn. 1986). Newhouse argues that the Court should presume that the Payment was made with undisclosed pre-petition funds on the basis of the "continued possession" doctrine, citing *Evans v. Robbins*, 897 F.2d 966, 969 (8th Cir. 1990). Because, as explained below, Newhouse did not controvert Michael McLain's testimony that he and his wife possessed no meaningful cash on May 3, 2002, the Court finds that the undisputed admissible evidence establishes that the Payment was made from post-petition income.

May 9, 2006, granting leave for Newhouse to submit evidence[7] to this Court that the Ledger Sheet had been authenticated in the summary judgment record.

Newhouse filed his "Evidence Concerning the Ledger Sheet" on May 19, 2006.[8] Newhouse argues that the Ledger Sheet has been authenticated, noting that (1) the Ledger Sheet is consistent with an authenticated bank statement (the "Bank Statement") produced by Appellees, (2) the Ledger Sheet is consistent with a spreadsheet (the "Spreadsheet") authenticated by Michael McLain at his deposition, and (3) in its discretion, the Court should consider the Ledger Sheet in opposition to Appellee's Motion for Summary Judgment, citing *Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985); *Enguita v. Neoplan USA Corp.*, 390 F. Supp. 2d 616, 624 (S.D. Tex. 2005); and *Hess v. Multnomah County*, 211 F.R.D. 403, 406 (D. Or. 2001).[9]

Rule 901(a) of the Federal Rules of Evidence provides that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." A proponent "may authenticate a document with circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery." *United States v.*

---

[7]This Court directed that such evidence must have existed as of November 21, 2005 – the date Newhouse filed his Response to Appellees' Motion for Summary Judgment.

[8]In Appellees' "Response to Appellant's Evidentiary Position", filed May 26, 2006, Appellees state that Newhouse's filing does not supplement the record with evidence; rather, it provides only legal argument. Appellees argue that Newhouse's filing thus does not comply with the Court's Order of May 9, 2006. However, Appellees did not request the Court to strike Newhouse's filing.

[9]Newhouse also requests leave to reopen discovery on the authentication of the Ledger Sheet. The Court **DENIES** this request.

*Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993). In *Arce*, a Fifth Circuit panel found that the government had shown sufficient evidence to authenticate drug ledgers:

> The government presented ample evidence in this case to authenticate the drug ledgers. Perry Podaras testified that he worked for Nunez, that these particular ledgers resembled drug ledgers that Nunez maintained, and that the handwriting on the ledgers was similar to Nunez's handwriting. Officers found the ledgers at Nunez's home. This evidence was sufficient to establish that the ledgers were indeed drug ledgers maintained by Nunez.

*Id.* at 1128.

Newhouse argues that he has submitted sufficient circumstantial evidence to show that the Ledger Sheet accurately depicts the McLains' financial situation during the period between April 30, 2002, and July 11, 2002. Newhouse notes that (1) the Ledger Sheet was produced in the appendix supporting Appellees' motion for summary judgment, (2) both the Ledger Sheet and the Bank Statement showed ATM Withdrawals of $885.00, (3) the Spreadsheet (which was authenticated by McLain at his deposition) and the Ledger Sheet use some similar labels,[10] (4) the Ledger Sheet shows expenses between April 30, 2002, and July 11, 2002, that are consistent with recurring expenses in the Spreadsheet, such as charges for TXU Gas, TXU Electric, and Verizon, and (5) the Ledger Sheet shows that Brandi McLain received her paycheck on May 1, 2002; May 14, 2002; and May 30, 2002; which is consistent with a pattern of deposits in the Spreadsheet.

Newhouse's evidence tends to show that the entries reflect at least some of the actual income and expenses of the McLains. However, Newhouse claims that the Ledger Sheet

---

[10]Newhouse correctly notes that both the Ledger Sheet and the Spreadsheet contain entries for "Brandi", "TXU Electric", "TXU Gas", "City of Irving, Utility Billling" [sic], "Bank of America", "Verizon", "Albertson's", "Minyard's", "Washington Mutual Bank", "Fina", "Petsmart", "Home Depot", and "West Coast Life".

accurately shows the McLains' financial situation at all times therein referenced, not just selected inflows and outflows of cash.[11] In other words, Newhouse claims that the Ledger Sheet accurately depicts *all* of the McLains' financial transactions between April 30, 2002, and July 11, 2002. Newhouse has not produced evidence that supports such a conclusion. In fact, the Ledger Sheet shows nine entries for May 2002, fifteen entries for June 2002, and seven entries for July 2002. Although the Spreadsheet does not fully cover May and June 2002, it has twenty-six entries for July 2002, and most of the other months in the Spreadsheet have many more than fifteen entries.[12] The dearth of entries on the Ledger Sheet, compared to the Spreadsheet, suggests that the Ledger Sheet is not a complete record of the McLains' financial transactions. Newhouse has not produced evidence sufficient to support a finding that the Ledger Sheet is an authentic record of all of McLains' financial transactions between April 30, 2002, and July 11, 2002.

Newhouse argues that, whether authenticated or not, the Court still has discretion to consider the Ledger Sheet as a response to Appellees' motion for summary judgment, citing *Eguia*, *Enguita*, and *Hess*. Although *Enguita* holds that a Court has discretion to consider unauthenticated evidence to oppose a motion for summary judgment, the Court declines to

---

[11]In Appellees' reply brief supporting their original Motion for Summary Judgment, Appellees state that the Ledger Sheet is "incomplete". Newhouse recognizes this in his "Evidence Concerning the Ledger Sheet", and argues that this statement further supports a finding that the Ledger Sheet is authentic and that the Court should find that the Ledger Sheet accurately depicts the McLains' financial situation. The Court disagrees that the record supports those conclusions.

[12]The Spreadsheet has twenty-four entries for May 2001, twenty-three entries for June 2002, nineteen entries for July 2001, sixty-one entries for August 2002, and sixty-six entries for August 2003.

-10-

exercise such discretion in this case, and excludes the Ledger Sheet from consideration.[13] *See Enguita*, 390 F. Supp. 2d at 624 (citing *Rill v. Trautman*, 950 F. Supp. 268, 269 (D. Mo. 1996)); *see also King*, 31 F.3d at 346 ("unauthenticated documents are improper summary judgment evidence"); *Duplantis*, 948 F.2d at 191-92; *Oliver*, 44 F. Supp. 2d at 824.

Newhouse next argues that, even if the Court declines to consider the Ledger Sheet, the Court should find that McLain had funds as of May 3, 2002, to make the Payment. The Court finds a genuine issue of material fact as to whether Brandi McLain received her paycheck on May 1, 2002. The receipt of such a paycheck would show that the McLains possessed at least $1,600 as of May 1, 2002. However, Newhouse has not shown any evidence of the McLains' spending between May 1, 2002, and May 3, 2002. Therefore, the receipt of income on May 1, 2002, does not controvert McLain's testimony that he possessed no meaningful cash on May 3, 2002. *See Lynch Props.*, 140 F.3d at 625 ("We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." (citation omitted)); R. 135-36.

Because the Court finds that Newhouse has not controverted McLain's testimony that he

---

[13]*Eguia* and *Hess* do not change the Court's conclusion. In *Eguia*, the Fifth Circuit panel held that "[d]ocuments presented in support of a motion for summary judgment may be considered even though they [are unauthenticated] if there is no objection to their use." 756 F.2d at 1136. Here, Appellees object to the consideration of the Ledger Sheet. In *Hess*, the district court – relying on Ninth Circuit authority – held that "when a party opposing summary judgment fails to comply with the formalities of Rule 56, a court may choose to be somewhat lenient in the exercise of its discretion to deal with the deficiency, provided that discretionary leniency does not stretch so far that Rule 56(e) becomes meaningless." *Hess*, 211 F.R.D. at 406 (citing *Sch. Dist. No. 1J, Mutnomah Cty. v. ACandS*, 5 F.3d 1255, 1261 (9th Cir. 1993)). The Court noted that "some of the exhibits clearly are within [the plaintiff's] personal knowledge", and exercised its discretion to consider them. Here, the Ledger Sheet is not "clearly" indicative of the McLains' financial position, therefore, the Court declines to consider it as authentic. *Accord Hess*, 211 F.R.D. at 406 (declining to consider other unauthenticated exhibits).

possessed no meaningful cash on May 3, 2002, the Court finds that the Payment was made entirely with post-petition income and that Newhouse has not demonstrated a genuine issue of material fact as to whether the money used to make the Payment was property of the estate. As a result, the estate is not entitled to any proceeds of the WCL policy. *See In re Clark*, 960 F.2d at 477. Thus, the Court **AFFIRMS** the judgment of the Bankruptcy Court.

**SO ORDERED.**

July 11, 2006.

---
BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS